IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLAW J. KORNECKI,                      :<br>      Plaintiff,           :<br>                                                                                                          :<br>              v.              :<br>                                                    :<br>TEMPLE UNIVERSITY HOSPITAL,              :<br>      Defendant.           :<br>                                                    : | Civil Action<br><br>No.: 02-CV-3708 |

**DEFENDANT TEMPLE UNIVERSITY HOSPITAL'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Temple University Hospital ("Temple" or the "Hospital"), whose proper corporate name is Temple University-Of the Commonwealth System of Higher Education, hereby moves for summary judgment as to count II (defamation) of the complaint.

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

This case stems from the Hospital's discharge of plaintiff on March 4, 2002 after Hospital's investigation revealed that plaintiff bought pornographic movies and accessed, viewed, and downloaded pornography to Temple computers during his employment. This misconduct qualified as "misuse of Temple property" [computers] and "conduct unbecoming a Temple employee," which are explicit grounds for discharge under Temple University Hospital's personnel policies. Although plaintiff admits participating in this conduct, at least to some degree,

he denies that he accessed, viewed and downloaded <u>all</u> of the pornography that is apparent on his computers. Moreover, he admits to purchasing only some of the pornographic movies for which purchase confirmations appeared in his Temple e-mail files.

Regardless of plaintiff's equivocating, there is no factual dispute concerning whether plaintiff engaged in conduct for which the Hospital appropriately discharged him, only the quantity of pornography he consumed via Temple computers. As a result, there is no <u>genuine</u> issue of <u>material</u> fact for a jury to decide since it is true that plaintiff accessed pornography while he was working and, therefore, summary judgment on count II of the complaint, defamation, is appropriate.

**A.   Plaintiff admits accessing pornographic websites and purchasing pornographic DVD's using Temple computers.**

Plaintiff admits that on at least one occasion, on December 27, 2001, during work hours, he browsed for, and then ordered, three (3) pornographic DVD's using Hospital computers. Kornecki Deposition, pages 149-50, attached as Exhibit 1; <u>see also</u> Exhibit 3. Those videos were entitled: (1) "Assbusters"; (2) "Climax Shots #2: New Booty"; and (3) "Euro Hardriders 3." Plaintiff admits that he ordered these pornographic DVD's from a website called www.adulteyes.com.[1] He also admits that he

---

[1] Examples of the types of movie covers plaintiff was perusing during work hours are shown in Exhibits 6 & 9.

browsed titles while searching for the three he purchased. After completing the sale, Adult Eyes even sent the receipt for the purchase of the pornographic movies to plaintiff's Temple e-mail address. A copy of that e-mail receipt is attached hereto as Exhibit 3.

Plaintiff also does not dispute that he used his Temple desktop computer on no less than fifteen (15) other occasions to view the AdultEyes website wherein he perused other adult video titles. Exhibit 1, pp. 160-161; See Exhibit 2.[2] Knowing his DVD purchases were discovered by Temple and his adulteyes.com web activity was clear from his computer records, plaintiff conceded this point at his deposition. See Exhibit 1, pp.160-161.

Plaintiff also admitted that on about and additional fifteen (15) other occasions he viewed on his work computer other websites that sold pornographic DVD's or displayed pornographic images. Exhibit 1, pg. 162-3, 165.[3] Plaintiff testified that he did not know whether there was censored or uncensored pornography on those web pages, Exhibit 1, pg. 162-3,

---

[2] Exhibit 2 is a chronology of dates and times that websites were accessed on the desktop computer that Temple provided to plaintiff. The list has been condensed to show the times "adulteyes.com" and some of the other pornographic DVD websites were accessed, even though other pornographic DVD purchasing sites and pornographic websites are listed in the documents not produced for the purposes of this motion.

[3] Plaintiff testified that he "saw nothing wrong" with browsing for, and ordering movies like "Assbusters" on his work computer, while he was supposed to be working. Exh. 1, page 161.

but the websites had names, including adultmovies.com[4]; AshleyNChad.com[5]; xxxbuster.com; and 3xvideorental.com.

These admissions alone are sufficient justification for Temple to have discharged plaintiff given the severity of the violation and the plaintiff's utter disregard for Temple's reputation and its rules. Ex. 16, pp. TEMPLE 0342-0344.

**B.  Despite Plaintiff's denials, it is clear that he bought additional pornography from Temple's computers.**

Although Mr. Kornecki claims that he only purchased pornography on his Hospital computer on one occasion, e-mails that he received at his Temple e-mail address refute this contention. In fact, plaintiff received <u>four (4)</u> other separate e-mails from adulteyes.com confirming the purchase of five additional videos during work hours. Adult Eyes sent plaintiff confirmations of the following pornography purchases to his <u>Temple</u> e-mail address:

(1) On Thursday, October 5, 2000 at 3:16 p.m., plaintiff received an e-mail confirming that he ordered "Watcher 3," on Wednesday, October 4, 2000 at 2:00 p.m. <u>See</u> the E-mail, attached as Exhibit 4.[6]

---

[4] Where DVD's such as "Bald Beavers", "Cum Shots Deluxe", and "Mila Squirts Las Vegas" were pulled up. Exh. 2, pg. TEMPLE 0622.

[5] An adult web site showing images of hardcore pornography. Exhibit 2, pp. TEMPLE 0541-542.

[6] This e-mail and the others like it were recovered by David Chamberlain, a Temple information technology manager tasked with investigating the extent of plaintiff's pornographic access on Temple

4

(2) On Monday, October 16, 2000 at 11:27 a.m. plaintiff received an e-mail confirming his purchase of two other movies: "Hit her in the Shitter" and "Angry Anal #2." See the E-mail attached as Exhibit 5.[7]

(3) On Tuesday, November 7, 2000 at 2:40 p.m., Plaintiff received an order confirmation for "Watcher 2" from Adult Eyes. The order was placed that same day at 1:40 p.m. That e-mail is attached as Exhibit 7. In addition, during that same window of time, three (3) pornographic images were downloaded to plaintiff's laptop computer. These are attached collectively as Exhibit 8. Moreover, the DVD cover of "Watcher 2" was located on the hard drive of plaintiff's laptop computer. That image is attached as Exhibit 9.

(4) On Monday, November 13, 2000 at 5 p.m. plaintiff received an order confirmation for "555 Cumshots" from Adult Eyes. Plaintiff placed that order that same day at 1:40 p.m. That e-mail confirmation is attached as Exhibit 10.

In addition to plaintiff's admitted access of pornography no less than thirty (30) times while at work, using Temple computers, Exhibit 1, pp. 160-161; 162-163, there were also approximately an additional 90 pornographic newsgroups

---

computer equipment after plaintiff was first suspected of using his computer to gather pornography.

[7] Not only did plaintiff order "Angry Anal 2," an image of "Angry Anal #5" appeared on one of plaintiff's Temple laptop computers. See Exhibit 6.

5

saved in his laptop computer.[8]  Countless other images were found on the computer as well.  A copy of a summary of the audit of David Chamberlain, an information technology manager, of the computers that Temple issued to plaintiff is attached as Exhibit 12.

Based on the above facts and related investigation, plaintiff was terminated on March 4, 2002 for violation of Temple policies governing the use of its equipment and for immoral and indecent behavior – i.e. conduct unbecoming a Temple Employee.  See Exhibit 13.  Plaintiff then brought this lawsuit in June 2002, claiming that Temple, among other things, defamed him.  Temple moves for summary judgment on the defamation count.

II.  **ARGUMENT**

A motion for summary judgment shall be granted where all of the evidence demonstrates that there "is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P., Rule 56 (c).  The moving party has the initial burden of demonstrating that no genuine issue of material fact exists.  Once that burden is met,

---

[8] A Newsgroup, as defined by dictionary.com is "an area on a network, especially the internet, devoted to the discussion of a specified topic…".  On plaintiff's computer, nearly 100 newsgroups were bookmarked with the tag line of "erotica," which is a method for indicating they contain pornography.  In addition to text, images are shared in this fashion.  A copy of the list of newsgroups located on the plaintiff's computer is attached as Exhibit 11.  They include such names as alt.binaries.picures.erotica.anal; alt.binaries.pictures.erotica.hardcore; even alt.binaries.pictures.eroctica.nuns.  Exhibit 11 at page 2.

the non-moving party must present evidence that there is a genuine issue of material fact.  The non-moving party may not rest on the pleadings, but must present evidence of a genuine dispute of a material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

**A.  The Hospital is entitled to summary judgment on plaintiff's defamation claim.**

Under Pennsylvania law, a communication is defamatory if it "tends to so harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Allen Organ Co. v. Galanti Organ Builders, Inc., 798 F.Supp. 1162, 1173 (E.D. Pa. 1992), citing U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 1923 (3rd Cir. 1990), citing Birl v. Philadelphia Electric Co., 402 Pa. 292, 303, 167 A.2d 472 (1960).

To succeed in an action for defamation, a plaintiff must prove (1) the defamatory character of the communication; (2) publication by the defendant; (3) its application to the plaintiff; (4) understanding by the recipient of its defamatory meaning; (5) understanding by the recipient that it is intended to apply to the plaintiff; (6) special harm to the plaintiff; and (7) abuse of a conditionally privileged occasion.  See 42 Pa.C.S.A. § 8343;  See also Miketic v. Baron, 450 Pa. Super. 91,

7

675 A.2d 324, 327 (1996), citing Maier v. Maretti, 448 Pa. Super. 276, 671 A.2d 701, 704 (1995); 42 Pa. C.S.A. § 8343(a). Plaintiff must also prove that the published statement is false. Keddie v. Pennsylvania State University, 412 F.Supp. 1264, 1277 (M.D. Pa. 1976); see also 42 Pa.C.S.A. §8342.

Plaintiff has produced no evidence of any publication or abuse of privilege by Temple, whatsoever. Nor is there any evidence that the supposedly defamatory statement, which was not published published, is false. His complaint asserts, solely on information and belief, that one specific employer was advised by Temple that he downloaded pornography and misused Hospital property, yet there is no evidence to support this allegation. See Exhibit 14, ¶38. Plaintiff's complaint reasons only:

> The defamatory material was maintained and published by Temple during this time period of March 2002 to the present, and, upon information and belief, has been communicated to, among others, Siemens Medical Solutions Health Services Corporation.

Exhibit 14, ¶38.

A complaint for defamation is considered inadequate when the complaint fails to provide with any particularity the content of the alleged defamatory statements made by the defendant. See Sapin v. Vincente, 461 A. 2d 833, 836 (Pa. Super. 1983). As this Court can see, plaintiff's complaint is,

8

at best, inadequate and, there is simply no evidence whatsoever that Temple defamed him in any respect.

      **1.    Plaintiff's claim for defamation fails because any communication to anyone that plaintiff used Temple's computers to view and purchase pornography was <u>true</u>.**

      Even though plaintiff's complaint is deficient in that it fails to cite with specificity a defamatory statement by Temple, see <u>Sapin</u>, *supra*, any statement regarding his pornography use while at work would have been true.

      It is well established law that truth is an absolute defense to defamation. <u>See</u> <u>Keddie v. Pennsylvania State University</u>, 412 F.Supp. 1264, 1277 (M.D. Pa. 1976); <u>see</u> <u>also</u> 42 Pa.C.S.A. §8342; <u>see</u> <u>also</u> <u>Pelagatti v. Cohen</u>, 536 A 2d. 1337 (1345-46 (Pa. Super. 1987), appeal denied 548 A. 2d 256 (Pa. 1988), *citing* <u>Corabi v. Curtis Publishing Co.</u>, 237 A. 2d 899, 910 (Pa. 1971).

      Plaintiff has absolutely no evidence of false information being provided to third parties by Temple. Moreover, any statement must be <u>substantially</u> inaccurate:

> Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.' Put another way, the statement is not considered false unless it would have a difference effect on the mind of the reader from that which the pleaded truth would have produced.

9

<u>Mason v. New Yorker Magazine Inc.</u>, 501 US 496, 517 (1991) (citations omitted).

As explained in Section I-A above, plaintiff admitted under oath that he did indeed visit several adult websites on at **least thirty (30)** separate occasions that sold pornographic DVD's. Furthermore, on at least one of those occasions, he purchased three pornographic DVD's. Each instance admittedly occurred on work time and with Hospital computers. See Exhibit 1, pp. 159-161, Exhibit 3.

Therefore, even if plaintiff can prove that the Hospital made statements to any prospective employer (or anyone for that matter) about his use of Temple's computers to obtain or access pornography, such statements are absolutely and admittedly true.

> **2. Plaintiff's claim for defamation fails because he has no evidence that the Hospital published any defamatory communication to anyone, including to any prospective employer.**

In order to establish a prima facie case of defamation, a plaintiff must produce evidence that the defendant communicated a defamatory publication. <u>See</u> <u>Miketic</u>, *supra*, 450 Pa. Super. 91, 675 A.2d at 327. In the absence of any evidence of publication, a plaintiff cannot meet his burden to prove there was defamation.

In fact, plaintiff has not identified a single witness to support his claim that Temple communicated plaintiff's use of pornography to anyone other than to Temple employees, who had a need to know of his misconduct. Exhibit 15, ¶1 (listing <u>all</u> witnesses identified by plaintiff to date supporting his claim — not one from the alleged recipient of the defamatory statements: Siemens Medical Solutions Health Services). Plaintiff's failure to produce evidence is fatal to his defamation claim.[9]

Moreover, the sharing of the truthful information about plaintiff's use of pornography "on the job" would be conditionally privileged as a matter of law as it was shared between persons similarly interested. Any one of several persons having a common interest in the particular subject matter where they correctly or reasonably believe that the facts exist, which another sharing a common interest is entitled to know, may share those facts pursuant to conditional privilege. <u>See</u> <u>Gaiardo v. Ethyl Corp.</u>, 697 F.Supp. 1377, 1388 (M.D.Pa. 1986); <u>see also</u> <u>Smith v. Greyhound Lines, Inc.</u>, 614 F.Supp. 558, 560 (W.D. Pa. 1984), <u>aff'd</u>. 800 F.2d 1139 (3d Cir. 1986). <u>See also</u> <u>Rankin v. Phillippe</u>, 206 Pa. Super. 26, 211 A.2d 56, 58 (1965). The court determines whether the occasion on which a defendant made his or her statement was privileged. <u>See Rankin</u>

---

[9] Further eviscerating plaintiff's defamation claim is the fact he obtained employment less than six months after his termination making the same money that he made at Temple. Exhibit 1, pp. 35-36; Exh. 15, pg. 5.

11

<u>v. Phillippe,</u> <u>supra</u> at 58, <u>citing</u> Restatement, Torts §619.  In this case, plaintiff's employer and future employer have a common interest in his use of work resources for pornography.

Thus, Temple must prevail as a matter of law since it published no defamatory statements to any prospective employer of plaintiff, any alleged statement between employers would be conditionally privileged.  The bottom line is that plaintiff has offered no evidence of publication by Temple of defamatory statements, and therefore his cause of action for defamation is doomed.

**III. CONCLUSION**

For each of the foregoing reasons, the Hospital is entitled to summary judgment in its favor and against plaintiff on plaintiff's defamation claim in Count II of his complaint and it should be dismissed, with prejudice.

Respectfully submitted,

 /s/ Neil J. Hamburg
NEIL J. HAMBURG

Attorney No. 32175
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
 (215) 255-8590
Counsel for Defendant
Temple University Hospital

12

## CERTIFICATE OF SERVICE

I, Neil J. Hamburg, certify that the foregoing Motion for Summary Judgment as to Count II of Plaintiff's Complaint, Memorandum of Law, and Proposed Order has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that a copy of the foregoing Withdrawal of Counsel and Entry of Appearance was served by regular mail, on March 14, 2006, upon the following:

        George Bochetto, Esquire
        Bochetto & Lentz, P.C.
        1524 Locust Street
        Philadelphia, PA 19102

        /s/ Neil J. Hamburg [NH 1402]
        Neil J. Hamburg