IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LESLAW J. KORNECKI

v.

TEMPLE UNIVERSITY HOSPITAL

CIVIL ACTION

NO. 02-3708

**O R D E R**

AND NOW, this _____ day of _____, 2006, upon consideration of Plaintiff's Motion to File Surreply Memorandum of Law Opposing Summary Judgment, opposition thereto (if any), and the record as a whole, it hereby is ORDERED that the said motion is GRANTED.

AND IT FURTHER IS ORDERED that the Court shall consider Exhibit A (Plaintiff's Surreply Memorandum of Law Opposing Summary Judgment) to plaintiff's said motion with respect to defendant's pending motion for summary judgment.

BY THE COURT:

_____
NORMA L. SHAPIRO, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LESLAW J. KORNECKI

v.

TEMPLE UNIVERSITY HOSPITAL

CIVIL ACTION

NO. 02-3708

**PLAINTIFF'S MOTION TO
FILE SURREPLY MEMORANDUM OF LAW
OPPOSING SUMMARY JUDGMENT**

NOW COMES plaintiff Leslaw J. Kornecki ("Kornecki"), by and through his undersigned counsel, Bochetto & Lentz, P.C., and hereby moves this Honorable Court pursuant to E.D. Pa. L.R. 7.1 to file a short surreply memorandum of law--annexed hereto as **Exhibit A** (Plaintiff's Surreply Memorandum of Law Opposing Summary Judgment)--in opposition to defendant Temple University Hospital's ("Temple") pending motion for summary judgment.

WHEREFORE, Kornecki respectfully requests this Honorable Court grant his said relief, enter an Order of the substance submitted herewith, and grant him such other relief that the Court deems appropriate under the circumstances.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

By: _____
George Bochetto
Stephen E. Skovron
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LESLAW J. KORNECKI

v.

TEMPLE UNIVERSITY HOSPITAL

CIVIL ACTION

NO. 02-3708

**PLAINTIFF'S SURREPLY MEMORANDUM OF LAW
OPPOSING SUMMARY JUDGMENT**

I. **PROGRESSIVE DISCIPLINE**

Temple repeatedly argues that Kornecki argues Temple could and should have disciplined him in a more sound, or better-reasoned, manner, including "progressively," as pursuant to Temple Work Rules. E.g., Temple Reply Memorandum of Law Supporting Summary Judgment ("Reply SJ Memo") [miscast as a "Surreply" memorandum], 2-5 (citing Martin v. Health Care & Retire. Corp., 67 Fed. Appx. 109 (3d Cir. 2003) (nonprecedential); EEOC v. Rite Aid Corp., No. 03-CV-777-GMS, 2005 WL 3434779 (D. Del. Dec. 12, 2005); Richmond v. ONEOK, Inc., 120 F.3d 205 (10th Cir. 1997); Cavicchia v. Philadelphia Housing Auth., 137 Fed. Appx. 495 (3d Cir. 2005) (nonprecedential); Sarko v. Henderson, No. 2:03-CV-03473-LDD, 2004 WL 2440202 (E.D. Pa. Oct. 29, 2004); Colburn v. Parker Hannifin / Nicholas Portland Div., 429 F.3d 325 (1st Cir. 2005)).

Temple's argument is unavailing for either of two reasons: (1) it misses the point of Kornecki's argument, and/or (2) its cited authority is inapposite.

Temple misses the point of Kornecki's argument about progressive discipline. Kornecki does ***not*** argue that Temple would have made a more sound, or better-reasoned, disciplinary decision if it had adhered to its published work rules and disciplined Kornecki

progressively. Rather, Kornecki argues that Temple's failure to discipline him progressively--as *mandated* by Temple Work Rules for the first offense of an "Unauthorized Use of Temple Property" (see Kornecki Statement of Genuinely Disputed Material Facts, Exhibit N thereto, 7 (Bates stamp p. no. Temple 0342))--is *one* of multiple pieces of evidence of Temple's procedural irregularity, and/or deviation from policy, in Kornecki's discipline, establishing a fact question as to pretext. E.g., Doebele v. Sprint / United Mgt. Co., 342 F.3d 1117, 1138-39 (10th Cir. 2003). See also Massey v. United States Customs and Border Protection, No. Civ.A. 03-6590, 2004 WL 3019234, at *8 (E.D. Pa. Dec. 28, 2004); Royer v. Pennsylvania State Univ., 84 Fed. Appx. 226, 227 (3d Cir. 2004) (nonprecedential). See also Kornecki Memorandum Opposing Summary Judgment, § IV.B.2 (other evidence of procedural irregularity / policy deviation).

That is, Kornecki posits that the irregularities attending his discipline are of such force as to reasonably raise this jury question: Whether Temple concocted its proffered explanation *after* deciding to terminate Kornecki for having to miss work irregularly, pursuant to the FMLA, to get his daughter to chemotherapy. See, e.g., Massey, 2004 WL 3019234, at *8. See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 48 (1986) (material facts are those "that might affect the outcome of the suit under the governing law," and disputes over those facts "will properly preclude the entry of summary judgment").

Temple's latching onto one of the procedural irregularities Kornecki identifies--failure to discipline progressively (in derogation of published work rules)--simply does not elevate that single element of Kornecki's proofs to his entire response to Temple's proffered explanation.

Moreover, the authority upon which Temple relies in the portion of its Reply

2

Memorandum about progressive discipline is inapposite.

In <u>Martin</u>, <u>supra</u>, plaintiff identified her employer's failure to discipline her progressively as procedural irregularity indicating a jury question on the issue of the employer's pretext. 67 Fed. Appx. at 113. However, in that case, plaintiff "Martin was previously demoted, she [therefore] was progressively disciplined," despite claiming otherwise. <u>Id.</u> In this case, by contrast, it is not contested that Kornecki was disciplined *once and only once* for an alleged "unauthorized use of Temple property;" namely, when he was terminated; though Temple's work rules plainly read that the first offense thereof results in a written warning, Kornecki Fact Statement, Exhibit N thereto, 7 (Bates stamp p. no. Temple 0342).

In <u>EEOC v. Rite Aid</u>, <u>supra</u>, the Court's statement--"the fact that Rite Aid may not have followed its progressive discipline policy in dealing with Din's performance issues does not warrant a finding of pretext," 2005 WL 3434779, at *5--is pure dictum inasmuch as the employer's proffered explanation was that the employee stated she would resign, <u>id.</u> at *3 ("she was going to look for another job, and [supervisor] Shannon Lee had taken her at her word and made arrangements to replace her"). In any event, in this case, Kornecki does not identify Temple's failure to discipline him progressively as the only indicia of Temple's pretext; accordingly, the <u>Rite Aid</u> Court's admonition against finding pretext on, and only on, failure to discipline progressively does not apply to this case.

In <u>Richmond v. ONEOK</u>, <u>supra</u>, the Court interpreted Oklahoma law with respect to whether an employee manual creates an implied contract: "[W]hen viewed in conjunction with a pattern or practice indicating the adoption and consistent use of these procedures, the handbook may lead reasonable minds to differing conclusions about the existence of implied contractual

3

rights to use of the procedures." 120 F.3d at 210 (internal quotes and brackets omitted; quoting Oklahoma case). In this case, Kornecki neither identifies Temple Work Rules as a contract Temple breached, nor relies on Oklahoma law. Rather, he identifies the Work Rules as evidence of Temple procedure, and identifies Temple's deviation therefrom as one of many indications that its proffered explanation is pretextual. See, e.g., Doebele, 342 F.3d at 1138-39.

In Cavicchia, supra, plaintiff responded to employer's proffered explanation with one item of evidence: Failure to discipline him progressively, which evidence did not raise an inference of pretext in light of the record otherwise:

> The District Court found that the stated reason for terminating Cavicchia's employment was that he was absent without leave for five work days after a recent history of absenteeism. Cavicchia did not dispute that he was absent, but argued to the District Court and argues here that this reason was pretextual because Cavicchia should have been subject to more progressive discipline under PHA's discretionary policy. The District Court found that, although a plaintiff can survive summary judgment by discrediting an employer's proffered reason as pretextual, Cavicchia did not make such a showing in this case, as it is clear from the record that he was terminated for absenteeism.

137 Fed. Appx. at 497. By contrast, in this case, Kornecki responds to Temple's proffered explanation with more than one procedural irregularity and/or policy deviation. In addition to identifying Temple's failure to discipline him pursuant to its own rules, Kornecki also identifies (2) Temple Work Rules identifying the Unauthorized Use of Temple Property as a basis for termination (rather than written warning) ***only when accompanied by*** injury or fiscal harm to

4

Temple, and that David Chamberlain--chair of the committee that oversaw Kornecki's termination hearing--testified that no evidence thereof was offered, and (3) Kornecki's termination for the alleged reason of "conduct unbecoming a Temple employee," a grounds for discipline not stated, or even reasonably implied, in Temple's work rules. Kornecki Memorandum Opposing Summary Judgment, 7-10.

Sarko v. Henderson, supra, is a case similar to Cavicchia, supra, inasmuch as the Sarko plaintiff's response to the employer's proffered explanation was limited to two pieces of evidence: "(1) the fact that progressive discipline was not utilized, and (2) that Defendant believed Ms. Mokluk over Plaintiff." 2004 WL 2440202, at *4. For those same reasons--which is to say, Kornecki presents a matrix of evidence in response to Temple's proffered explanation, rather than just one or two items--Sarko, supra, is no more dispositive of this case than Cavicchia, supra.

Lastly, in Colburn, supra, the employer hired a private investigator who videotaped the employee-plaintiff "engaging in a number of activities outside of his home, including driving, spending thirty minutes at the gym, renting videos, and shopping," though the employee had explained he needed time off owing to disabling migraine headaches. 429 F.3d at 336. In this case, on the other hand, there is an abject absence of direct evidence, leaving Temple's exclusive investigator--David Chamberlain--to admit, candidly, that he cannot show that Kornecki individually was responsible for causing images to reside on any computer to which he had access, or for causing any computer to which he had access to visit pornographic websites, calling into question the overwhelming majority of Temple's evidence of Kornecki's "unauthorized use of Temple property," if not ninety-nine percent of it. E.g., Kornecki Fact

Statement, ¶¶ 32-41.

Thus, in this case, the only legitimate evidence of Kornecki accessing pornographic material is his own admission: That he purchased five or so videos to be mailed to his home.

Now clearly, Kornecki recognizes full well that his having purchased those videos may, indeed, amount to a literal unauthorized use of Temple property. But the following is as clear: Such an "excursion" is well nigh trifling compared to the pages upon pages upon pages of images and website visits Temple parades as its explanation for firing plaintiff.

That, then, raises this question: Whether Temple was mistaken only about the volume of unauthorized use for which Kornecki is responsible, but--at bottom--not mistaken about the unauthorized use, whether trifling. In such a case, Temple argues, no jury reasonably can believe Temple's proffered explanation is pretextual.

And that tension might control the inquiry in this case if Kornecki's response to Temple's explanation were uni-dimensional (i.e., failure to discipline progressively, alone). But, as stated, Kornecki's response to Temple's proffered explanation is not uni-dimensional. Rather, Temple's procedural irregularity and policy deviation characterize multiple aspects of Kornecki's termination or, at least, so many aspects as to reasonably raise this question for the jury: Whether Temple simply tried to build a case against Kornecki *after* deciding that his predicably irregular absences from work, pursuant to the FMLA, meant he had to be discharged to make way for a more regularly-available employee.

For the foregoing reasons, Temple's motion for summary judgment should be denied.

## II.     VOLUME OF PORNOGRAPHY

The fact dispute about the volume of pornography Kornecki accessed directly impugns Temple's proffered explanation for his termination because--at bottom--Temple no more can establish that Kornecki accessed the pornography it produced in discovery than any other person, rendering its proffered explanation not simply mistaken, but absolutely unreasonable:

> In its briefs and at oral argument, defendant [Hercules] has asserted its decisionmakers 'honestly' and 'sincerely' believes Finch was a poor performer. Citing McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368 (7th Cir. 1992), defendant argues that even if its decisionmakers mistakenly believed Finch was a poor performer, Hercules cannot be liable for age discrimination. . . . .
>
> The Court notes that Hercules' position is consistent with the nature of disparate treatment analysis, which is based on a claim that the employer intentionally discriminated against the plaintiff. On the other hand, to require a plaintiff in a pretext case to disprove the employer's subjective belief would require the type of 'smoking gun' evidence which the Supreme Court has recognized is often absent in employment discrimination cases. I conclude that, while an employer should not face liability for intentional discrimination when its decision is based on a good faith mistake, the same is not necessarily true if the plaintiff introduces evidence from which the factfinder could reasonably conclude that the employer's 'honest belief' was unreasonable. If the plaintiff introduces evidence sufficient to create a genuine issue of fact as to the reasonableness of the employer's mistaken belief, it is for the trier of fact to determine whether the employer's belief was so unreasonable as to be pretextual. See St. Mary's[ Honor Center v. Hicks], 509 U.S. [502, 511 (1993)] ('The factfinder's

7

> disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity[1]) may, together with the elements of the prima facie case, suffice to show intentional discrimination').

Finch v. Hercules Inc., 865 F. Supp. 1104, 1127 n.25 (D. Del. 1994).

Temple concedes Mr. Kornecki's establishment of a prima facie FMLA retaliation claim.

Temple concedes that it only directly can establish Mr. Kornecki accessed pornography to the extent he admitted having purchased about five pornographic videos to be mailed to his home.

Temple believes that Mr. Kornecki accessed the pages upon pages upon pages of pornographic images and website visits it produced in discovery, but David Chamberlain--its *sole investigator* into the issue--admits that he *cannot show* that Kornecki caused those images to reside on any computer, or that Kornecki caused those computers to visit the websites at issue. By way of analogy, it is as if Temple were to have proffered the following as its explanation for terminating Kornecki: Temple lost $1.5M in fiscal year 2001. In a case such as this one, Temple may well have proved that it lost that much money in the period. But its proof of loss no more identifies Kornecki as the cause thereof than does Temple's production of a library of pornography identify Kornecki as causing it to reside on his computer, especially when that production is accompanied by its investigator's unadorned admission that he *cannot identify Kornecki* as having culled it.

Indeed, if Temple were to be believed, then Mr. Kornecki would have had to have

---

[1] "Untruthfulness." American Heritage Dict., 2d col. ed. (1985), 785.

8

spent countless hours, practically daily, collecting pornography while at work in his office, proximate to a fully functioning operating room.

That is, Kornecki has produced evidence that renders Temple's proffered explanation unreasonable; that evidence: David Chamberlain's frank admissions that he cannot identify Kornecki as the person responsible for gathering the plethora of pornography, or visiting the collection of pornographic websites, Temple has produced in discovery.

And pursuant to, e.g., Finch, supra (citing St. Mary's, 509 U.S. at 511), the combination of Kornecki's prima facie case with evidence that Temple's proffered explanation is unreasonable renders the pretext issue in the case one for the jury.

Moreover, in this section of its Reply Memorandum Supporting Summary Judgment, Temple's authority is inapposite as well.

In Kautz v. Met-Pro Corp., 412 F.3d 463 (3d Cir. 2005), the Court found that plaintiff produced evidence of a fact dispute regarding only one of the employer's many proffered explanations for its adverse employment action. Id. at 476. This case of course differs materially in that defendant Temple has proffered only one explanation for its adverse employment action against Kornecki: That Kornecki accessed (or downloaded, or consumed) vast quantities of pornography via his Temple-issued computer. Compare Kornecki Fact Statement, Exhibit L thereto (Mar. 4, 2002 Termination Letter ("the existence of such [pornographic] material on your computer is prohibited")) with Temple-Produced Documents Responsive to Kornecki Document Requests for pornography evidence: *390* Documents Bates-stamped "Temple" 124-68; 213-43; 247-317; 358-460; 474-533; 554-639, reprinted in Kornecki Motion in Limine to Preclude Pornography, Exhibits.

9

In this section of its Reply Memorandum, Temple cites <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101 (3d Cir. 1997) (en banc) for the proposition that "the question is not whether the employer made the best or even a sound business decision; it is whether the real reason is discrimination." Reply Memo Supporting SJ, 7. In <u>Keller</u>, plaintiff responded to the employer's proffered explanation for its adverse employment action in two ways: (1) that he could not achieve certain goals for reasons beyond his control, and (2) that the employer so knew. <u>Id.</u> at 1109. The distinguishing difference between <u>Keller</u> and this case is that, in <u>Keller</u>, plaintiff admitted that the employer's employment-action yardstick was applicable to him, albeit wrongly so because factors beyond his control influenced his measure against that yardstick. <u>See id.</u> By contrast, in this case, Kornecki wholly rejects any suggestion that he wiled away his typical work week by consuming pornography during much, of not most, of it. Thus, in this case, Kornecki does not acknowledge that Temple's employment-action yardstick--the presence of pornography on computers he (and others) used--is applicable to him, rendering <u>Keller</u> inapposite.

Temple cites <u>Healy v. New York Life Ins. Co.</u>, 860 F.2d 1209 (3d Cir. 1988) for the proposition that "our inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee." Reply Memo Supporting SJ, 7. The <u>Healy</u> Court made that statement in connection with the plaintiff's response to one of the employer's proffered explanations. 860 F.2d at 1216. That explanation was that the plaintiff failed adequately to coordinate implementation of a Management by Objective (MBO) program. <u>Id.</u> In response, plaintiff explained that "he spent less than 10 percent of his time on the MBO," implying that if he had known how important the program was to his employer, he would have

dedicated more of himself to it, which would have changed the employer's assessment. Id. And on that, the Court stated it was concerned with evidence of pretext, not employee evaluations. Id.

Employee evaluations, as such, do not figure in Temple's proffered explanation. Nor could they in this case (all Temple evaluations indicate Kornecki should have been promoted, not fired). Thus, this Court is not concerned with the role that the employer's evaluations of Kornecki's performance played in the employer's adverse employment action, rendering Healy inapposite for the proposition for which Temple offers it.

Lastly, Temple cites Logue v. International Rehabilitation Assocs., Inc. 837 F.2d 150 (3d Cir. 1988) for the proposition that "our task is not to assess the overall fairness of the employer's actions" (brackets and ellipsis omitted). Rely Memo Supporting SJ, 7. The Logue Court made that observation in remarking on plaintiff's proffering evidence sufficient to meet some, though not all, of the employer's proffered explanations. Id. at 154 & 154 n.5. See also id. at 154 ("the district court erred in failing to consider all of IRA's proffered evidence of legitimate business reasons"). But as stated previously, in this case, Temple proffers but one explanation for terminating Kornecki: He consumed pornography such as to fill 390 pages, about half of them full-page images and the other half single-spaced lines of visited websites with patently pornographic titles. Because this Court is not concerned with trying to conclude which, among many, of the employer's proffered explanations were met by contrary evidence by plaintiff, Logue is inapposite for the proposition for which Temple offers it.

## III.   CONCLUSION

WHEREFORE, Kornecki respectfully requests this Honorable Court deny Temple's summary judgment motion, enter an Order of the substance submitted herewith, and

11

grant Kornecki such other relief that the Court deems appropriate under the circumstances.

                                    Respectfully submitted,

                                    **BOCHETTO & LENTZ, P.C.**

By: _____
       George Bochetto
       Stephen E. Skovron
       1524 Locust Street
       Philadelphia, PA  19102
       Ph:  (215) 735-3900
       Fx:  (215) 735-2455