**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | |
| LESLAW J. KORNECKI, | : | Civil Action |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TEMPLE UNIVERSITY HOSPITAL, | : | No.: 02-CV-3708 |
| Defendant. | : | |
| _____ | : | |

**DEFENDANT TEMPLE UNIVERSITY HOSPITAL'S ANSWERS TO**
**PLAINTIFF'S REQUEST FOR ADMISSIONS**

Defendant Temple University Hospital (the "Hospital" or "Temple"), by and through its undersigned counsel, submits the following answers to plaintiff's requests for admissions:

1.    In July 1988, Temple University Hospital hired Les Kornecki as full-time Manager of the Hospital's Operating Room Computer Operations.  [See document Temple 20.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that on July 6, 1998, Plaintiff began his employment as Manager, Operating Room Computer Operations at Temple University Hospital.

2.    Mr. Kornecki's starting annual salary was $60,000.
[See document Temple 20.]

**Response:**

Denies each and every averment contained in this paragraph and states that Plaintiffs starting salary was $2,038.46 bi-weekly ($52,999.96 annually).

3.    Mr. Kornecki's job responsibilities included managing Operating Room computer personnel and programming, implementing Operating Room computer programs, assuring Operating Room procedure scheduling data were complete and accurate for surgical cases, and administering the Operating Room computer budget. [See documents Temple 0017-0018.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that Plaintiff's job responsibilities included managing Operating Room computer programming and operations personnel of which there were none, implementing Operating Room computer programs that were purchased from outside vendors, assuring that procedure scheduling data was complete and accurate for posting surgical cases and administering the Operating Room computer budget.

4.    Temple University Hospital conducted an annual
evaluation of Mr. Kornecki's job performance three times.

**Response:**

Denies each and every averment contained in this
paragraph except admits only that plaintiff's supervisor, Marcia
Redden, drafted an annual written performance evaluation of Mr.
Kornecki every year of his employment for a total of three times
and that plaintiff's employment was terminated for misuse of
Temple property and conducting unbecoming a Temple employee for
visiting pornographic websites and downloading pornographic
material on Temple computers before he could receive his fourth
annual written performance evaluation.

5.    Each time Temple University Hospital evaluated Mr.
Kornecki's job performance, it concluded he consistently met, or
exceeded, Temple University Hospital's standards in every
category it measured. [See documents Temple 0023-26; 0044-47;
0101-04.]

**Response:**

Denies each and every averment contained in this
paragraph except admits only that on each of Plaintiff's three
annual written performance evaluations which were drafted by
Marcia Redden prior to discovering plaintiff's visitation of
pornographic websites and downloading of pornography on Temple

computers, Plaintiff received a rating of "2" or "3" (on a scale of 0-3) on each applicable section of Parts I and II of the evaluations. A rating of "0" is defined as "Performance is deficient in meeting given standard." A rating of "1" is defined as "Performance partially meets standard. Improvement needed." A rating of "2" is defined as "Performance consistently meets standard." A rating of "3" is defined as "Performance exceeds given standard."

6. In one such evaluation, Temple University Hospital stated that Mr. Kornecki's efforts on a particular project "resulted in several million dollars of increased billing and potential revenue" for the Hospital. [See document Temple 0017-0105.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that Marcia Redden made the following entry in Plaintiff's first annual written evaluation:

> **SUPPORTIVE DOCUMENTATION AND COMMENTS:**
>
> Les was hired to help select, implement & maintain the OR Computer System. The selection process was complete in April & the first of a succession of go-live dates is Nov 15th. Les has very effectively helped to managed [sic] the initial phase.
> During the "lull" between date of hire & selection, Les assumed the responsibility for coordinating & tracking the Retro Billing project for the OR implants. This resulted in several million

4

dollars of increased billing & potential revenue for TUH.

7.   In October 2000, Temple University Hospital gave Mr. Kornecki an annual salary raise to $63,500. [See document Temple 0054.]

**Response:**

Denies each and every averment contained in this paragraph except admits that in October 2000, Temple University Hospital gave Mr. Kornecki an annual salary raise to $63,500 that was retroactive to his annual date of July 2000.


8.   While employed by Temple University Hospital, Mr. Kornecki's daughter Jennifer was diagnosed with leukemia. [See Michelle Hackett Mar. 16, 2004 deposition exhibit H1.]

**Response:**

Denied.  After reasonable inquiry, the Hospital is without knowledge or information sufficient to form a belief as to the date Plaintiff's daughter was first diagnosed with leukemia except admits only that Plaintiff informed the Hospital that his daughter had leukemia while he was employed by the Hospital.

9.    On February 20, 2002, Mr. Kornecki applied to Temple University Hospital for intermittent leave—under the federal law known as the "Family Medical Leave Act"—so he could transport his daughter to and from the hospital for leukemia treatment. [See Michelle Hackett Mar. 16, 2004 deposition exhibit H1.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that on February 20, 2002, Plaintiff applied to Temple University Hospital for an Intermittent Family Medical Leave of Absence.  After reasonable inquiry, the Hospital is without knowledge or information sufficient to form a belief as to the specific reason Plaintiff requested intermittent leave other than to assist in the care of his daughter.

10.    On February 22, 2002, Temple University Hospital granted Mr. Kornecki's request for intermittent leave under the Family Medical Leave Act.  [See Michelle Hackett Mar. 16, 2004 deposition exhibit H2.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that on February 20, 2002, Temple University Hospital granted Plaintiff's request for an

Intermittent Family Medical Leave of Absence for the period from February 22, 2002 through February 22, 2003.

11.  On March 4, 2002—ten days after granting Mr. Kornecki's request for intermittent leave—Temple University terminated him.  [See document Temple 0195.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that on March 4, 2002, Temple University Hospital terminated Plaintiff's employment for misuse of Temple property and conduct unbecoming a Temple employee for visiting pornographic websites and downloading pornographic material on Temple computers.

12.  Temple University Hospital said it terminated Mr. Kornecki for misuse of Temple property and conduct unbecoming a Temple employee.  [See Temple Mar. 4, 2002 letter to Kornecki.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that Temple University Hospital terminated Plaintiff's employment for misuse of Temple property and conduct unbecoming a Temple employee for visiting pornographic websites and downloading pornographic material on Temple computers.

13.  According to Temple University Hospital, Mr. Kornecki
misused Temple property and engaged in conduct unbecoming a
Temple employee because pornography was present on a personal
computer the Hospital issued to him for use on his job.  [See
document Temple 0195; see also Answer ¶16.]

**Response:**

Denies each and every averment contained in this
paragraph except admits only that Plaintiff's employment was
terminated for misuse of Temple property and conduct unbecoming
a Temple employee for visiting pornographic sites and
downloading pornographic material on Temple computers.

14.  According to Temple University Hospital, in late 2001,
it issued a new Sony laptop computer to Mr. Kornecki to replace
an older Gateway laptop, whereupon Mr. Kornecki—following
instructions—gave the older laptop to a Temple University
Hospital nurse, who discovered pornography on it.  [See Answer,
¶16.]

**Response:**

Denies each and every averment contained in this
paragraph except admits only that Plaintiff's Temple-issued
Gateway laptop computer was replaced by a Sony laptop computer,
and that Plaintiff prepared the Gateway laptop computer for use
by another Temple employee, Elaine Joyce, and that in or about

December 2001, Plaintiff turned the Gateway laptop computer over to Ms. Joyce who discovered shortly thereafter that voluminous pornographic materials had been stored on the Gateway laptop computer, prompting the University to conduct an investigation.

15.   The nurse notified Temple University Hospital that pornography was on the Gateway laptop and, as a result, Temple University Hospital investigated, including analyzing the Gateway laptop's contents, the Sony laptop's contents, and the contents of a stationary computer at Mr. Kornecki's desk, a Gateway desktop.  [See documents Temple 0116-17.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that Elaine Joyce discovered voluminous pornographic materials had been stored on the Gateway laptop computer, prompting the University to conduct an investigation which included an audit of the Gateway and Sony laptops that had been issued to Plaintiff as well as desktop computers located in Plaintiff's office.

16.   As a result of its investigation, Temple University Hospital concluded that pornography was present on each laptop, and that the stationary Gateway desktop was used to visit pornographic websites.  [See documents Temple 0116-17.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that as a result of its investigation, Temple University Hospital concluded that: pornographic materials were present on each laptop; the stationary desktop was used to visit pornographic websites; and, that Plaintiff was responsible for this inappropriate use and misuse of Temple property.

17.    Documents produced by Temple University Hospital show that stationary Gateway desktop was used to visit eleven pornographic websites for a total duration of two hours and twenty-four minutes.

**Response:**

Denies each and every averment contained in this paragraph except admits only that the documents produced by the Hospital show that from September 6, 2001 through Feb, 22, 2002, Plaintiff's desktop computer (identified as AP02ORAQ) visited numerous pornographic websites numerous times. After reasonable inquiry, the Hospital is without knowledge or information sufficient to form a belief as to the exact duration of time Plaintiff's desktop computer was connected to pornographic websites.

18.  Mr. Kornecki denied to Temple University Hospital that he ever caused pornography to be present on either laptop, and denied using the Gateway desktop to visit pornographic websites.

**Response:**

Denies each and every averment contained in this paragraph and states that Plaintiff admitted to downloading some of the pornographic material that was discovered on the computers and to ordering pornographic videos during working hours.

19.  Mr. Kornecki told Temple University Hospital that if pornography were present on either laptop, or if the Gateway desktop had been used to visit pornographic websites, then someone else must have downloaded that pornography and visited those websites.

**Response:**

Denies each and every averment contained in this paragraph except admits only that Plaintiff stated that prior to December 2000, he would open up his Gateway laptop and desktop computers with his own password and allow others to work on them despite knowing that giving access to his passwords to other individuals violated Hospital and University policy and that Plaintiff had personally downloaded some of the pornographic materials that were discovered on the computers and that he used

a Temple computer to order pornographic videos during working
hours.

20.  Mr. Kornecki explained to Temple University Hospital
that, while he possessed each laptop, and while the desktop was
in his office, other employees, as well as Temple students, used
each computer regularly.

**Response:**

Denies each and every averment contained in this
paragraph except admits only that Plaintiff stated that before
December 2000, he would open up his Gateway laptop and desktop
computers with his own password and allow others to work on them
despite knowing that giving access to his passwords to other
individuals violated Hospital and University policy.

21.  Temple University Hospital acknowledged that Mr.
Kornecki's supervisor, Marcia Redden, occasionally used the
desktop computer located in Mr. Kornecki's office.  [See Temple
University Hospital answer to Interrogatory no. 6 directed to
it.]

**Response:**

Denies each and every averment contained in this
paragraph except admits only that Marcia Redden always used

Plaintiff's desktop computer in Plaintiff's presence on the few occasions that she used Plaintiff's desktop computer.

22.  Temple University Hospital acknowledged that its employee, Diane Meloni, occasionally used the desktop computer located in Mr. Kornecki's office.  [See Temple University Hospital answer to Interrogatory no. 6 directed to it.]

**Response:**

Denies each and every averment contained in this paragraph except admits only that Diane Meloni always used Plaintiff's desktop computer in Plaintiff's presence on the few occasions that she used Plaintiff's desktop computer.

23.  Despite its investigation and analysis, Temple University Hospital never discovered evidence that Mr. Kornecki actually performed the computer keystrokes that caused pornography to be present on either laptop.

**Response:**

Denies each and every averment contained in this paragraph and states that in light of the presence of pornographic images stored on both laptops that were assigned to Plaintiff, the fact that Plaintiff's desktop computer had accessed numerous pornographic websites, the fact that Plaintiff's password was required for computer access and

Plaintiff's admission that he downloaded some of the pornographic material and ordered pornographic videos during working hours, it is perfectly clear that Plaintiff actually performed the computer keystrokes that caused pornography to be present on both laptops.

24.    Despite its investigation and analysis, Temple University Hospital never discovered evidence that Mr. Kornecki actually performed the computer keystrokes by which the Gateway desktop visited pornographic websites.

**Response:**

Denies each and every averment contained in this paragraph and states that in light of the presence of pornographic images stored on both laptops that were assigned to Plaintiff, the fact that Plaintiff's desktop computer had accessed numerous pornographic websites, the fact that Plaintiff's password was required for computer access and Plaintiff's admission that he downloaded some of the pornographic material and ordered pornographic videos during working hours, it is perfectly clear that Plaintiff actually performed the computer keystrokes that caused pornography to be present on the Gateway desktop computer.

25.  Temple University Hospital does not possess any document, including any audit trail or other computer program printout, that shows Mr. Kornecki caused pornography to be present on either laptop.

**Response:**

Denies each and every averment contained in this paragraph and states that in light of the presence of pornographic images stored on both laptops that were assigned to Plaintiff, the fact that Plaintiff's desktop computer had accessed numerous pornographic websites, the fact that Plaintiff's password was required for computer access and Plaintiff's admission that he downloaded some of the pornographic material and ordered pornographic videos during working hours, it is perfectly clear that Plaintiff actually performed the computer keystrokes that caused pornography to be present on both laptops.

26.  Temple University Hospital does not possess any document, including any audit trail or other computer program printout, that shows Mr. Kornecki caused the gateway desktop to visit pornographic websites.

**Response:**

Denies each and every averment contained in this paragraph and states that in light of the presence of

pornographic images stored on both laptops that were assigned to Plaintiff, the fact that Plaintiff's desktop computer had accessed numerous pornographic websites, the fact that Plaintiff's password was required for computer access and Plaintiff's admission that he downloaded some of the pornographic material and ordered pornographic videos during working hours, it is perfectly clear that Plaintiff actually performed the computer keystrokes that caused pornography to be present on the Gateway desktop computer.

27.  After having been terminated, Mr. Kornecki applied to the Commonwealth of Pennsylvania for unemployment compensation benefits.

**Response:**

Admitted.

28.  Temple University Hospital contested Mr. Kornecki's claim for unemployment compensation benefits on the grounds that he downloaded pornography onto, and visited pornographic websites with, computers issued to him by the Hospital.

**Response:**

Temple University Hospital objects to this request as being irrelevant, and without waiving and subject to this objection, states that after making a reasonable inquiry and

being unable to find any information regarding Plaintiff's
Unemployment Compensation, Temple University Hospital denies
knowledge and information sufficient to form a belief as to the
truth of each and every averment contained in the paragraph.


29.   As a result of Temple University Hospital contesting
Mr. Kornecki's claim for unemployment compensation benefits, the
Commonwealth of Pennsylvania, Department of Labor and Industry,
held a hearing in which Mr. Kornecki and Temple University
Hospital each took part.

**Response:**

          Temple University Hospital objects to this request as
being irrelevant, and without waiving and subject to this
objection, states that after making a reasonable inquiry and
being unable to find any information regarding Plaintiff's
Unemployment Compensation, Temple University Hospital denies
knowledge and information sufficient to form a belief as to the
truth of each and every averment contained in the paragraph.


30.   After that hearing, the Department of Labor and
Industry determined that Mr. Kornecki was entitled to
unemployment compensation benefits because Temple University
Hospital did not sustain its burden of proof.

**Response:**

Denies each and every averment contained in this paragraph except admits only that the Department of Labor and Industry issued a Notice of Determination which stated that Temple University Hospital did not provide firsthand information showing that Plaintiff violated a rule and that Plaintiff was eligible for unemployment compensation benefits.

31.  Temple University Hospital did not appeal that determination.

**Response:**

Temple University Hospital objects to this request as being irrelevant, and without waiving and subject to this objection, states that after making a reasonable inquiry and being unable to find any information regarding Plaintiff's Unemployment Compensation, Temple University Hospital denies knowledge and information sufficient to form a belief as to the truth of each and every averment contained in the paragraph.

Neil J. Hamburg
Thomas Moshang III
Attorney I.D. Nos. 32175 & 78902
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103
(215) 255-8590

Attorneys for Defendant
Temple University Hospital

18

<u>CERTIFICATE OF SERVICE</u>

     I, Thomas Moshang III, certify that I served a copy of the foregoing Answers to Plaintiff's Interrogatories by facsimile and first class mail, on June 16, 2004 upon the following:

          Steve Skovron, Esquire
          Bochetto & Lentz, P.C.
          1524 Locust Street
          Philadelphia, PA 19102

          Thomas Moshang III